IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Amanda G.,[1] Plaintiff, vs. Commissioner of Social Security, Defendant. | Civil Action No. 6:25-cv-12577-BHH-KFM **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[2] The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g), 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on November 21, 2017, alleging that she became unable to work on December 27, 2016 (Tr. 230–40). The applications were denied initially (Tr. 62–81, 83–86) and on reconsideration (Tr. 89–122) by the Social Security Administration. On November 8, 2019, the plaintiff requested a hearing (Tr. 141). On July

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.

[2] A report and recommendation is being filed in this case in which one or both parties declined to consent to disposition by the magistrate judge.

21, 2021, an administrative hearing was held at which the plaintiff, represented by counsel; a witness; and Tyra Watts, an impartial vocational expert, appeared and testified in Greenville, South Carolina before the administrative law judge ("ALJ") assigned to the case (Tr. 32–61). On August 2, 2021, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 11–26). The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on April 12, 2022 (Tr. 1–4).

On May 26, 2022, the plaintiff filed a complaint in the United States District Court for the District of South Carolina, and on March 16, 2023, the case was remanded to the Commissioner for further proceedings (Tr. 1350–52). *Gibson v. Comm'r Soc. Sec. Admin.*, C/A No. 6:22-cv-01672-BHH, at doc. 21 (D.S.C. Mar. 16, 2023). On June 5, 2023, the Appeals Council issued an order remanding the matter to the ALJ to issue a new decision in accordance with the order and consolidating a later-filed application with the application under consideration (Tr. 1355).

On July 17, 2024, a second administrative hearing was held at which the plaintiff, represented by counsel, and Ryan Farrell, an impartial vocational expert, appeared and testified in Greenville, South Carolina before the ALJ assigned to the case (Tr. 1296–1309). On September 13, 2024, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 1277–95). The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on July 18, 2025 (Tr. 1260–64). The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

(2) The claimant has not engaged in substantial gainful activity since December 27, 2016, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: asthma with tobacco use, obstructive sleep apnea, chronic sinusitis, muscle tension dysphoria, right foot plantar fasciitis, and status-post thyroidectomy (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the claimant can never climb ladders, ropes, and scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can tolerate bilateral reaching, handling, and fingering can be performed frequently within the exertional level. The claimant can occasionally be exposed to extreme cold, extreme heat, humidity, and hazards associated with unprotected dangerous machinery or unprotected heights. The claimant can never be exposed to chemical irritants or pulmonary irritants (such as fumes, smoke, odors, excessive dust, gases and poor ventilation) and the claimant can concentrate, persist, and maintain pace sufficient to understand, remember, and carry out simple, routine tasks. The claimant can perform jobs with only superficial oral communication with the general public that does not require vocal interaction as an essential job function.

(6) The claimant has no past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7) The claimant was born on December 4, 1978, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

> (8) The claimant has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964).
>
> (9) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. §§ 404.1568 and 416.968).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from December 27, 2016, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(A), (H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1, (4) can perform her past relevant work, and (5) can perform

other work. *Id.* §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A claimant must make a *prima facie* case of disability by showing she is unable to return to her past relevant work because of her impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 191–92.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

The plaintiff, who was 38 years old on the alleged disability onset date, seeks disability based upon physical impairments that limit her ability to work. She has no past relevant work experience (Tr. 1285). The plaintiff argues that the ALJ erred by (1) finding that her fibromyalgia was not a medically determinable impairment ("MDI") (doc. 17 at 51–55) and (2) finding that her narcolepsy was not an MDI (*id*. at 50–51). The

Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence and should be affirmed (doc. 21 at 4–12).

***Fibromyalgia***

As noted above, the plaintiff argues that the ALJ erred in finding that her fibromyalgia was not an MDI (doc. 17 at 51–55). Social Security Ruling 12-2p provides the framework for an ALJ's consideration of a claimant's fibromyalgia. SSR 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869. A claimant may establish fibromyalgia as an MDI through evidence from an acceptable medical source, but a diagnosis of fibromyalgia alone is insufficient in the absence of evidence consistent with such a diagnosis. *Id*. at *2. A diagnosis of fibromyalgia may be confirmed through either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia ("1990 Criteria") or the 2010 ACR Preliminary Diagnostic Criteria ("2010 Criteria"). *Id*.

To establish fibromyalgia as an MDI based on the 1990 Criteria, the claimant must show:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.
>
> . . . .
>
> 3) Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.* at *2–3. Under the 2010 Criteria, a claimant must have a history of widespread pain; repeated manifestation of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id.* at *3.

Fibromyalgia symptoms and signs include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or memory problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* at *3 n.9. Co-occurring conditions include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.* at *3 n.10.

In finding the plaintiff's fibromyalgia was not an MDI, the ALJ conclusorily noted that the plaintiff had normal sensation and had never been diagnosed with fibromyalgia (in one sentence addressing several conditions found to be non MDIs) (Tr. 1280). Although the plaintiff concedes that the record evidence does not include trigger point tests for purposes of the 1990 Criteria, she argues that the ALJ did not explain whether the 2010 Criteria were met. The undersigned agrees. Here, the ALJ failed to address fibromyalgia as directed by this court *and* the Appeals Council – compounding the error by providing *less* analysis in the most recent decision. For example, the ALJ's passing reference to fibromyalgia without any analysis does not reflect consideration of the majority of the factors for consideration under the 2010 Criteria. Indeed, as argued by the plaintiff, the ALJ did not recognize the plaintiff's ongoing reports of widespread pain (doc.17 at 53 (citing Tr. 829)). Further, the ALJ did not explain if he considered the plaintiff's repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. For example, as argued by the plaintiff, her treatment records reported six fibromyalgia symptoms, signs, or co-occurring conditions, including weakness (Tr. 1037, 1054), anxiety

(Tr. 1179, 1228), gastroesophageal reflux disease ("GERD") (Tr. 1038, 1054), numbness and tingling (Tr. 1037, 1246), rash (Tr. 1032, 1246), and temporomandibular joint dysfunction ("TMJ") (Tr. 1227, 1238). It may be that the ALJ found these symptoms, signs, or co-occurring conditions too sparse in the treatment records to support the 2010 Criteria, but it goes beyond the purview of substantial evidence review to provide that explanation on the ALJ's behalf.

Indeed, the ALJ's fibromyalgia analysis did not mention the plaintiff's treatment with Eric Zollars, M.D., Ph.D., a rheumatologist. Dr. Zollars noted a diagnosis of fibromyalgia based on the plaintiff's reports that she had been diagnosed with fibromyalgia twenty years prior (Tr. 824–34). During this visit on June 3, 2019, the plaintiff's examination findings revealed no swelling of any joint, although the plaintiff had diffuse myofascial tender points with wince and withdraw with pressure to the anterior chest (Tr. 829). Dr. Zollars noted that the plaintiff's fibromyalgia was "a pain processing condition. We discussed that has nothing to do with inflammation or autoimmunity" and that the plaintiff was instructed to try daily stretching and was given information on fibromyalgia (Tr. 830). Other treatment notes from Dr. Zollars also indicated that the plaintiff had a normal joint exam with no synovitis, tenderness, or deformity, but still noted fibromyalgia and suggested that the plaintiff try tai chi to treat her fibromyalgia (Tr. 1171–85). Further, Richard W. Rissmiller, M.D., one of the plaintiff's medical providers, noted a suspicion that the plaintiff had fibromyalgia and indicated that the plaintiff would be seeking additional rheumatology treatment when she could afford the treatment (Tr. 752–55). Similarly, Mitchell F. Dillman, M.D., noted that many of the plaintiff's symptoms, including "pins and needles, cold toes, and numb 4th and 5th toes left are most likely related to her longstanding fibromyalgia. This is a difficult problem to treat" (Tr. 2608 (internal quotation marks omitted)).

Despite the foregoing, the ALJ's discussion of the plaintiff's fibromyalgia in the RFC assessment focused on the plaintiff's subjective complaints about her fibromyalgia that

the ALJ found inconsistent with the record evidence including tender point evidence or other objective findings (Tr. 1283). The Commissioner argues that the ALJ correctly found that the plaintiff's fibromyalgia could not be established by subjective complaints alone (doc. 21 at 10–11). However, *Arakas* clearly establishes that fibromyalgia is a disease "whose symptoms are entirely subjective, with the exception of trigger-point evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020) (internal quotation marks and citations omitted) (collecting cases recognizing that individuals with fibromyalgia typically have normal examination findings). The United States Court of Appeals for the Fourth Circuit also noted in *Arakas* that "ALJs may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based on the lack of objective evidence substantiating them." *Id*. at 97. Here, that is exactly what the ALJ did in finding that the plaintiff's fibromyalgia was not an MDI based on a lack of objective findings.

The Commissioner also argues that any error regarding fibromyalgia would be harmless because the ALJ's decision indicated that all impairments, even those found as non MDIs, were considered in the RFC assessment (doc. 21 at 11–12). However, the ALJ's error with respect to the plaintiff's fibromyalgia is not harmless because the ALJ clearly disregarded the plaintiff's subjective complaints relating to her fibromyalgia in the RFC assessment, which does not comply with the treatment required by *Arakas*. Accordingly, the error in evaluating the plaintiff's fibromyalgia is harmful, and remand is required.

In light of the foregoing record evidence and the ALJ's conclusory determination in violation of the standard articulated in *Arakas*, the court cannot find that substantial evidence supports the ALJ's determination that the plaintiff's fibromyalgia was not an MDI. "A necessary predicate to engaging in substantial evidence review is a record" that adequately explains the ALJ's findings and reasoning. *Dowell v. Colvin*, C/A No. 1:12-cv-1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015) (requiring that the ALJ "build a

logical bridge between the evidence and his conclusions") (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Accordingly, this case should be remanded so that the ALJ may properly address the plaintiff's fibromyalgia in accordance with SSR 12-2p and *Arakas*.

***Remaining Allegation of Error***

In light of the court's recommendation that this matter be remanded for further consideration as discussed above, the court need not specifically address the plaintiff's remaining allegation of error as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*); *see Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). As such, on remand, the ALJ is to also take into consideration the plaintiff's remaining allegation of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

July 24, 2026
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).